972 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glenn W. CLEMENTS, Defendant-Appellant.
 No. 91-50067.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 1992.
Decided Aug. 5, 1992.
 
 1
 Before HUG and PREGERSON, Circuit Judges, and PECKHAM,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Glenn Clements was convicted by a jury of receiving and causing the mailing of child pornography in violation of 18 U.S.C. § 2252.
 
 
 4
 Clements challenges his conviction on the ground that critical evidence should have been suppressed.[1] We have jurisdiction under 28 U.S.C. § 1291. We reverse the district court's judgment.
 
 BACKGROUND
 
 5
 On December 13, 1989, customs inspectors intercepted an international package for delivery to "G.W.C." at Clements' address. The package contained a pornographic video cassette depicting children engaging in sexual activities.
 
 
 6
 The cassette was forwarded to Special Agent Lowery, who began investigating Clements on January 10, 1990. The investigation, which included occasional surveillance of Clement's residence and a check to see whether Clements was known to the Southern California Obscenity Task Force, produced no inculpatory information.
 
 
 7
 On February 6, 1990, Lowery applied for a warrant to search Clements' residence. The search was to take place on February 15, 1990, when custom officers planned to make a controlled delivery of the intercepted video cassette.
 
 
 8
 Lowery's affidavit in support of the warrant application consisted of his declaration that a pornographic video addressed to G.W.C. had been intercepted en route to Clements' address, and a lengthy generic description of the "behavioral patterns of pedophiles." No evidence specifically linking Clements to this class of people was adduced in the affidavit, and Lowery never asserted that Clements belonged to such a class. Moreover, Lowery's affidavit did not reveal the negative results of his month-long investigation of Clements.
 
 
 9
 The warrant was granted. The officers were authorized to search for "[a] Kodak EKE 240 video cassette (VHS) format which contains depictions of minors engaged in sexually explicit activity." This was the intercepted video. In addition, however, the warrant also authorized the officers to search for a host of other items, including: (1) any "sexually explicit reproductions of a child's image, voice or handwriting"; (2) "published materials relating to children"; (3) "unpublished material relating to children"; (4) "pictures, photographs and videotapes of children"; (5) "toys, games, dolls, costumes, child or youth oriented decorations"; and (6) any items used to distribute or receive child pornography, including cameras, computers, letters, financial records, and telephone records.
 
 
 10
 Officers made the controlled video delivery to Clements' residence as scheduled. Pursuant to the warrant, the agents seized the video cassette and the envelope in which it was delivered. These items were located on a coffee table in the living room. The agents also seized several pieces of foreign correspondence found near the coffee table. In addition, the agents seized books, magazines, pictures, and letters related to child pornography found in Clements' bedroom. One item seized was a solicitation letter written in "pedophile code."
 
 DISCUSSION
 
 11
 Clements challenges the warrant on the grounds that it was overbroad and procured in bad faith. We agree. The government responds that because at least that part of the warrant authorizing the search for the video was valid, any other evidence seized is admissible pursuant to the plain view doctrine. We disagree.
 
 A. Probable Cause
 
 12
 This case is controlled by U.S. v. Weber, 923 F.2d 1338 (9th Cir.1991) (as amended). In Weber, the defendant ordered child pornography from a police "sting" operation. The police made a controlled delivery of the pornography to Weber's home. Before the delivery, a four part warrant was obtained. For our purposes, the first two parts are relevant. The first part authorized the police to search for the particular pornographic items delivered to Weber. The second part authorized a more general search for pornographic material. Weber, 923 F.2d at 1340-41.
 
 
 13
 We held in Weber that the mere fact that a person was known to have ordered and received pornography did not establish probable cause to conduct a general search for pornographic material. Id. at 1344. In particular, we repudiated the use of an affidavit which gave only a generic description of the proclivities of pedophiles. We held that such an affidavit, absent some particularized evidence linking the suspect to the class of pedophiles described, was not an adequate basis for a general search. Id. at 1345.
 
 
 14
 In applying Weber to Clements' case, two points stand out. First, the only positive information the investigating officer possessed when he applied for the search warrant was that a video tape of child pornography was intercepted en route to Clements' home. This is even less than had been known in Weber. Unlike Weber, Clements was not known by the police to have ordered pornographic material.
 
 
 15
 Second, as in Weber, the investigating officer in this case relied on a generic affidavit of the characteristics of a pedophile to support the warrant application, with nothing in the affidavit connecting Clements to the class of pedophiles described. Indeed, the affidavit in this case and in Weber cite to the same expert, Detective William H. Dworin.
 
 
 16
 Applying Weber to this case, we find that there was no probable cause to support the general search of Clements' residence.
 
 B. Good Faith
 
 17
 Weber also controls the question of whether the good faith exception applies to this case. We held in Weber that those parts of the search warrant authorizing a general search for pornographic material were not procured in good faith. Weber, 923 F.2d at 1346.
 
 
 18
 In Weber, we reasoned that the affidavit added no substance to the warrant. We also emphasized that since the government decided upon when to deliver the pornographic material, the government had sufficient time to complete a more particularized warrant. Id. These same two factors apply in this case. Moreover, the investigating officer in this case failed to disclose in the warrant application that a background check and occasional surveillance of Clements' home produced no evidence showing that Clements was a pedophile.
 
 
 19
 We conclude that the warrant to conduct a general search of Clements' residence was not procured in good faith.
 
 
 20
 C. Valid Portions of the Warrant.
 
 
 21
 The conclusion that certain parts of a warrant are infirm does not compel the conclusion that the entire warrant is invalid. We have previously held portions of a warrant are severable. See United States v. Holzman, 871 F.2d 1496, 1510 (9th Cir.1989). Evidence seized pursuant to the valid portion of a warrant will not be suppressed even if it might also have been seized pursuant to an invalid part of the warrant. Id.
 
 
 22
 The government contends that at a minimum, the warrant validly authorized the search for (1) the delivered video and (2) any correspondence related to its purchase.
 
 
 23
 Upon a careful review of the warrant, we conclude that the language of the warrant authorizing the seizure of the Kodak EKE 240 video cassette is valid because it is supported by probable cause and is sufficiently particular. Cf. Weber, 923 F.2d at 1343.
 
 
 24
 We also agree that probable cause supports the search for any correspondence related to the video. See id. However, our reading of the warrant does not reveal any language authorizing with sufficient particularity a search for correspondence related to the video. Instead, as noted above, the warrant purports to authorize a general search for any items used to distribute or receive child pornography, including cameras, computers, letters, financial and telephone records. The search is not restricted to correspondence related to the delivered video.
 
 
 25
 We conclude that the part of the warrant authorizing a search for the EKE video is the only valid portion of the warrant.
 
 D. Plain View
 
 26
 Because we hold that the search warrant was valid as to the video, we conclude that the search for and seizure of the video was lawful. Relying on this, the government urges us to apply the plain view exception to the remainder of the evidence seized. Under the plain view doctrine, seizure of items in plain view will be allowed if (1) the officers were on the premises lawfully, and (2) there was probable cause to believe the object in plain view was contraband or useful evidence of a crime. Arizona v. Hicks, 480 U.S. 321, 326, 107 S.Ct. 1149, 1153 (1987).
 
 
 27
 As indicated above, the video was seized on the coffee table in the living room. Next to the coffee table, the police found foreign correspondence. We hold that the plain view doctrine applies to these materials, because at that point the officers were conducting a lawful search and there was probable cause to believe the correspondence was evidence of a crime.
 
 
 28
 As to the remainder of the inculpatory evidence, we note that this evidence was seized in Clements' bedroom, either on shelves, or in drawers, or amid piles of books. We hold that the material seized in Clements' bedroom does not qualify for the plain view exception for the simple reason that it was not in plain view.
 
 CONCLUSION
 
 29
 The warrant to search Clements' residence was not supported by probable cause or procured in good faith, except insofar as it authorized the search for the EKE video. By virtue of the plain view doctrine, the evidence seized on or near the coffee table on which the video was found is admissible. All other evidence seized in the search of Clements' residence is ordered suppressed. The introduction of the solicitation letter found in Clement's bedroom and written in "pedophile code" provided strong evidence that Clements knowingly purchased child pornography. The introduction of this inadmissable evidence materially prejudiced Clement's trial and requires reversal of his conviction. The district court's judgment is REVERSED.
 
 
 
 *
 Honorable Robert F. Peckham, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Clements raises other issues on appeal. We do not consider Clements' additional arguments as they are rendered moot by this disposition